Chanel B. MITCHELL, Appellant,

v.

UNITED STATES, Appellee.

No. 11–CF–590.

District of Columbia Court of Appeals.

Argued March 21, 2013.
Decided April 11, 2013.

Sarah Stockwell, Tustin, for appellant.

Adrienne Dedjinou, Assistant United States Attorney, for appellee. Ronald C. Machen Jr., United States Attorney, Roy W. McLeese, III, Assistant United States Attorney at the time the brief was filed, and Elizabeth Trosman, Peter Lallas and Kendra D. Briggs, Assistant United States Attorneys, were on the brief for appellee.

Before WASHINGTON, Chief Judge, THOMPSON, Associate Judge, and SCHWELB, Senior Judge.

SCHWELB, Senior Judge:

A jury convicted Chanel Bianca Mitchell of three counts of unlawful possession of ammunition (UA), one count of unlawful possession of marijuana, one count of possession of drug paraphernalia (PDP), and one count of second-degree cruelty to children.[1] On appeal, Ms. Mitchell contends that the evidence was insufficient as a matter of law to support any of her convictions. We disagree and affirm.

## I.

At trial, the prosecution introduced evidence which, if credited, showed that on

---

1. Ms. Mitchell was acquitted of two counts of possession of an unregistered firearm (UF) (a .38 caliber and a .44 caliber pistol), two counts of possession of a prohibited weapon (PPW) (two sawed-off shotguns), and three counts of UA (associated with the UF and PPW charges).

June 11, 2010, a confidential informant reported to the police that a man in his thirties was in possession of an AK–47, two shotguns, and two handguns in his apartment at 4516 Quarles Street N.E. in Washington, D.C. The police obtained a search warrant, and they executed it at the stated location a few hours after receiving the informant's report. Upon entering the unit, the officers found Ms. Mitchell seated at the kitchen table with her three young children, apparently eating dinner. On the kitchen table the officers found what proved to be 0.39 grams of marijuana and a digital scale. A larger amount of marijuana, a second scale, and multiple empty small ziplock bags were recovered from a kitchen drawer and from the living room. Ammunition was found in a kitchen cabinet above the stove and in the top drawer next to the kitchen sink, as well as in the living room. Finally, the officers recovered two loaded revolvers and two loaded shotguns from under a cushion on the living room sofa, approximately five feet from the television.[2]

■ The officer who received the tip testified that he subsequently spoke with the informant and related to him that the man mentioned by the informant had not been present when the police searched the apartment, but that "we got the girl." The informant told the officer that "she was there the whole time anyway" and that she "knew all about it."[3] The police recovered from the kitchen a prescription bottle with Ms. Mitchell's name on it, as well as an identification card with her photograph and correspondence addressed to her in a bedroom on the second floor. Ms. Mitchell does not claim that she was not a resident of the apartment; indeed, her counsel states in her brief to this court that "officers executed a search warrant where Ms. Mitchell was residing with her three children."

At the trial, which was held from March 8 to 11, 2011, the jury acquitted Ms. Mitchell of the counts associated with the weapons and ammunition recovered from the living room sofa, but found her guilty of the marijuana and PDP charges, of the remaining UA counts, and of second-degree cruelty to children. Ms. Mitchell's counsel then filed a motion for a judgment of acquittal on the cruelty charge, claiming that the government failed to prove conduct on Ms. Mitchell's part that caused "a grave risk of bodily injury to a child." D.C.Code § 22–1101(b)(1) (2001). The trial judge denied the motion, holding in pertinent part that there was sufficient evidence to support the cruelty conviction because Ms. Mitchell was at the apartment with three young children, nobody else was there, marijuana, digital scales, empty ziplock bags, and ammunition were "scattered" around the kitchen and

> then underneath the sofa cushion was a handgun and I understand that . . . the defendant was acquitted of the guns, possession of the guns, but it does seem to me that the evidence was also relevant to [the] second-degree cruelty charge as well.

## II.

■ With respect to Ms. Mitchell's claims on appeal, we address in any detail

---

**2.** The foregoing listing of the recovered items of contraband is not quite complete, but it captures the essence of what the officers found.

**3.** No hearsay or other objection was interposed to this testimony. "Hearsay evidence admitted without objection may be properly considered by the trier of fact and given its full probative value." *Mack v. United States,* 570 A.2d 777, 782 (D.C.1990) (citation omitted).

only her contention that the evidence was insufficient to support her conviction of second-degree cruelty to children.[4] We conclude that although Ms. Mitchell's position is not altogether unreasonable, it cannot be reconciled with our precedents, and we therefore affirm her conviction of this count as well.

The title of the offense with which Ms. Mitchell has been charged is second-degree cruelty to children. Although comparable statutes in some other jurisdictions do not use the term "cruelty,"[5] the offense has been so characterized in the District of Columbia for more than a century. *See* 31 Stat. 1322, ch. 854, § 814 (1901). In construing our current statute, this court has looked to the dictionary definition of "cruel," which means "disposed to inflict pain" and "causing or conducive to injury, grief, or pain." *Alfaro v. United States*, 859 A.2d 149, 157 (D.C.2004) (quoting WEBSTER'S SEVENTH COLLEGIATE DICTIONARY 200 (1966)). Although counsel for Ms. Mitchell has declined so to argue, it is surely somewhat counter-intuitive to suggest that the weapons, ammunition, drugs, and drug paraphernalia recovered by the police were placed or kept where they were for the purpose of inflicting pain or causing injury to Ms. Mitchell's children.

The significance of the title of the statute should not be exaggerated. The Supreme Court has stated that the title is of use in interpreting a statute only if it "shed[s] light on some ambiguous word or phrase in the statute itself." *Carter v. United States*, 530 U.S. 255, 267, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000). It "cannot limit the plain meaning of the text," *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998), although it may be a "useful aid in resolving an ambiguity" in the statutory language. 359 U.S. 385, 388–89, 79 S.Ct. 818, 3 L.Ed.2d 893 (1959). We agree with the Supreme Court of Arizona that in determining the extent and reach of an act of the legislature, the court should consider not only the statutory language, but also the title, *Maricopa County v. Douglas*, 69 Ariz. 35, 208 P.2d 646, 648 (1949), and we shall do so here.

We turn now to the operative language of the statute. Section 22–1101(b) of the District of Columbia Code provides in pertinent part that a person commits second-degree child cruelty if he or she "intentionally, knowingly, or recklessly[ ][m]altreats a child, or engages in conduct which causes a grave risk of bodily injury to a child." The government claims that Ms. Mitchell knowingly and recklessly exposed her children to the loaded weapons under the cushion on the living room couch and that this conduct caused a grave risk of injury to the children within the meaning of the statute. We agree.

■ In evaluating Ms. Mitchell's claim of evidentiary insufficiency, we must view the evidence in the light most favorable to the prosecution, with due regard for the right of the jury, as the trier of fact, to weigh the evidence, to determine the credibility of witnesses, and to draw reasonable

---

4. Viewing the record in the light most favorable to the prosecution and drawing all reasonable inferences in the prosecution's favor, we conclude that an impartial juror could reasonably find the evidence, direct and circumstantial, more than sufficient to support Ms. Mitchell's convictions of PDP and of unlawful possession of marijuana. Ms. Mitchell's counsel has not argued in her brief that the evidence was insufficient to support Ms. Mitchell's convictions of three counts of UA, and any such claim has therefore been waived. *In re Shearin*, 764 A.2d 774, 777 (D.C.2000).

5. *See, e.g.,* Conn. Gen.Stat. § 53–21 (1999), quoted in *State v. Calvente*, 273 Conn. 138, 869 A.2d 192, 200 n. 10 (2005).

inferences. *Rivas v. United States*, 783 A.2d. 125, 134 (D.C.2001) (en banc); *Mills v. United States*, 599 A.2d 775, 780 (D.C. 1991) (citation omitted). Significantly in this case, no distinction is made between direct and circumstantial evidence; indeed, "circumstantial evidence may be more compelling than direct testimony." *Mills*, 599 A.2d at 780 (citation omitted.) Under the foregoing standard, an impartial juror could surely find beyond a reasonable doubt that the revolvers and shotguns on the sofa, all loaded and "ready for action," created a "grave risk of injury" to children who might be watching television five feet away. Indeed, it is difficult to discern how a reasonable trier of fact could find otherwise. To be sure, it may not have been *likely* that one of the children would seize a loaded weapon and try to shoot, with deadly results, but we have no hesitation in concluding that the risk was grave within the meaning of the statute, and that an impartial jury could readily so find.

Ms. Mitchell claims that she did not know that there were loaded weapons on the sofa and that the prosecution did not prove that she had such knowledge. She also points out that she was acquitted of the UF and PPW charges relating to these weapons, so that the jury must have believed that she was unaware of the small but potentially deadly arsenal in her living room. In our view, however, both of these contentions fall wide of the mark. Viewing the evidence in its entirety, we think it is readily apparent, and an impartial jury could find, that this apartment was the locus of a drug-selling operation, and that the loaded weapons were there to protect the business and those that operated it. The suggestion that one of two adults residing in the unit had no idea where the weaponry to defend the operation was located, when there were drugs, scales, ziplock bags and ammunition scattered all over the unit, and where the weapons were

five feet from the television, strains credulity to the point of naiveté. But even if one were to conclude that the circumstantial evidence pointing to Ms. Mitchell's knowledge was not enough—a conclusion that appears widely at odds with the record—the uncontradicted testimony in this case, in the form of hearsay from the informant (to which evidence no objection was made), was that Ms. Mitchell "was there the whole time anyway" and "knew all about it." Nothing was offered by the defense to rebut what the informant said. Under these circumstances, we are in no position to second-guess the verdict returned by the triers of fact.

It is true, and indeed readily understandable, that the jury acquitted Ms. Mitchell of the weapons charges. There was no evidence that Ms. Mitchell ever had the firearms in her actual possession, so that in order to prevail on the weapons counts, the government was required to prove that she was in constructive possession of them. In a constructive possession case, the prosecution faces the challenging burden of proving, *inter alia*, that the defendant intended, individually or jointly with another person or persons, to exercise dominion and control over the weapons and to guide their destiny. *In re R.G.*, 917 A.2d 643, 648, 649 n. 4 (D.C.2007); *Smith v. United States*, 55 A.3d 884, 887 (D.C.2012); *id.* at 890 (concurring opinion). Even the prosecution's trump card with respect to Ms. Mitchell's knowledge and state of mind—the informant—said nothing tending to show that Ms. Mitchell had the intention to guide the firearms' destiny although, according to him (and consistently with any common sense view of the record) she knew all about the weapons. In order to prove second-degree cruelty to children, on the other hand, the government would have to prove only that Ms. Mitchell knew of the danger and intention-

ally or recklessly failed to do anything about it—a very different proposition indeed, for nothing in the child cruelty statute suggests that an intent to exercise dominion is required. Moreover, even if the finding of guilt of second-degree cruelty to children were irreconcilable with the acquittal of the weapons counts, which it is not, inconsistent verdicts are permissible; "a not guilty verdict to one count of an indictment that is inconsistent with a guilty verdict to another count cannot invalidate the guilty verdict so long as the guilty verdict is based upon sufficient evidence." *Ransom v. United States,* 630 A.2d 170, 172 (D.C.1993); *see also Evans v. United States,* 987 A.2d 1138, 1140 (D.C. 2010).

There remains the question whether Ms. Mitchell could properly be convicted of an offense titled cruelty to children when there is no evidence that she was being cruel in the ordinary sense of the word. *See Alfaro,* 859 A.2d at 157. The operative language of the statute, however, as distinguished from its title, effectively treats reckless disregard of a grave risk of bodily injury to a child as the substantial equivalent of cruelty. The prosecution therefore "did not have to prove that [Ms. Mitchell] intended to cause [her children] any harm." *Lee v. United States,* 831 A.2d 378, 382 (D.C.2003). Indeed, notwithstanding the title of the statute, "cruelty to children is a general intent crime." *Id.* (citations omitted). As we explained in *Coffin v. United States,* 917 A.2d 1089 (D.C.2007), a case in which a conviction of attempted cruelty to children was affirmed when the defendant had driven while intoxicated with two unrestrained children in his vehicle, "[t]he statute does not require … that a person's conduct be directed at a child or that the child suffer an injury. The statute only requires that the person recklessly … engage in conduct which causes grave risk of bodily injury to a

child." *Id.* at 1093–94 (statutory citation and internal quotation marks omitted).

In the present case, the jury could reasonably find that the exposure of the children to the presence of loaded weapons under a cushion on the sofa near the television, together with all of the surrounding circumstances, constituted the very kind of reckless disregard of a grave risk of bodily harm to the children that we have held to be the functional equivalent of cruelty. Accordingly, Ms. Mitchell's convictions are

*Affirmed.*