*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-CV-0826

CLIENT EARTH, *et al.*, APPELLANTS,

V.

WASHINGTON GAS LIGHT COMPANY, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2022-CA-003323-B)

(Hon. Danya A. Dayson, Motions Judge)

(Argued October 23, 2024                    Decided September 4, 2025)

*P. Renee Wicklund*, with whom *Kim E. Richman* was on the brief, for appellants.

*Megan Berge*, with whom *Scott Novak*, *Adam Dec*, and *J. Mark Little* were on the brief, for appellee.

Before EASTERLY and HOWARD, *Associate Judges*, and THOMPSON, *Senior Judge*.

Opinion for the court by *Associate Judge* EASTERLY.

Concurring opinion by *Associate Judge* EASTERLY at page 26.

EASTERLY, *Associate Judge*: Appellants ClientEarth, U.S. PIRG Education Fund, and Environment America Research & Policy Center (collectively, the public interest organizations) filed a suit alleging that Washington Gas Light Company (Washington Gas) violated the Consumer Protection Procedures Act (CPPA) by making false and misleading statements about the environmental effects of its natural gas. The Superior Court dismissed the suit, concluding that the CPPA exempts entities regulated by the Public Service Commission (PSC), like Washington Gas, from suit thereunder in any forum. Effectively conceding that the plain text of the CPPA does not support this ruling, Washington Gas argues instead that binding precedent from this court dictates that it is exempt from the public interest organizations' suit. We are constrained to agree and accordingly affirm.

## I. Facts and Procedure

In July 2022, the public interest organizations filed a lawsuit against Washington Gas, a utility that provides natural gas energy services in the District. In their complaint, the public interest organizations alleged that Washington Gas was engaged in ongoing unfair and deceptive trade practices in violation of the CPPA because it was making false and misleading statements about the environmental effects of its natural gas in its bills to its customers, on its website, and in various

other public documents. To address these alleged violations, the public interest organizations requested declaratory and injunctive relief.

After filing a special motion to dismiss under the District's Anti-SLAPP Act, Washington Gas filed a motion to dismiss under Super. Ct. Civ. R. 12(b)(1) and 12(b)(6). In the latter motion, Washington Gas argued among other things that the CPPA creates "no right of action against Washington Gas." Washington Gas asserted that "the CPPA complaint procedures, D.C. Code § 28-3905, do not extend to reach 'persons subject to regulation by the Public Service Commission of the District of Columbia,'[1] such as Washington Gas." Washington Gas quoted from a provision of D.C. Code § 28-3903, which states, "The Department may not . . . apply the provisions of section 28-3905 to: . . . persons subject to regulation by the Public Service Commission of the District of Columbia." D.C. Code § 28-3903(c)(2)(B). Washington Gas also called the trial court's attention to *Gomez v. Independence Management of Delaware, Inc.*, 967 A.2d 1276 (D.C. 2009), a decision in which this court held that Section 28-3903(c)(2) prohibited an individual from bringing a private CPPA suit in a case involving landlord-tenant relations—another one of the

---

[1] The Public Service Commission is an agency that regulates utilities in the District. *See* Who We Are, District of Columbia Public Service Commission, https://dcpsc.org/About-PSC/About-the-Commission/Who-We-Are.aspx; https://perma.cc/2MJX-T8KN.

limitations in Section 28-3903(c)(2). *Id.* at 1286-88; *see also* D.C. Code § 28-3903(c)(2)(A). Washington Gas cited *Gomez* for the proposition that "Commission-regulated entities like Washington Gas are exempt from CPPA suit by private entities like" the public interest organizations.

In their opposition to Washington Gas's Rule 12(b)(1) and 12(b)(6) motion, the public interest organizations argued that the limitation against enforcement of the CPPA against persons regulated by the PSC does not apply to entities like themselves. The public interest organizations emphasized that the introductory text of Section 28-3902(c)(2), the "*Department* may not," was plainly a directive solely to the Department of Consumer and Regulatory Affairs, which they explained was separately "vested with the power to investigate and remedy consumer complaints." The public interest organizations further argued that, in light of significant amendments made to the CPPA in 2013 and 2019, *Gomez* reflected an obsolete understanding of the CPPA.

After holding a hearing on both motions, the Superior Court granted Washington Gas's Rule 12(b)(1) and (b)(6) motion and denied its special motion to dismiss under the Anti-SLAPP Act as moot. The court concluded that D.C. Code § 28-3903(c)(2), as interpreted by *Gomez*, exempted Washington Gas from being sued under the CPPA. Although the court acknowledged that the CPPA had been

amended since *Gomez*, the court observed that these amendments had not "alter[ed] the explicit exemptions from the CPPA set out in [Section] 28-3903(c)(2)."

The public interest organizations filed this timely appeal.

## II. Analysis

We are presented with a question of statutory interpretation: whether the CPPA prohibits public interest organizations from bringing private suits against entities subject to regulation by the PSC. We review this question de novo. *See Sharps v. United States*, 246 A.3d 1141, 1149 (D.C. 2021). Because the public interest organizations filed this lawsuit in July 2022, we analyze the 2022 version of the CPPA, and all citations to the statute are to that version unless otherwise indicated.[2] *See Sizer v. Lopez Velasquez*, 270 A.3d 299, 304-06 (D.C. 2022).

### A. The Text of the 2022 CPPA

In interpreting the 2022 version of the CPPA, "[o]ur aim is to ascertain and give effect to the legislature's intent[.]" *Sharps*, 246 A.3d at 1149 (alterations in

---

[2] The statute was amended again in 2023 and 2024, but no changes were made to the provisions directly at issue in this case. *See* Fiscal Year 2024 Budget Support Act of 2023, D.C. Law 25-50, § 2133(a), 70 D.C. Reg. 10366 (2023); New Student Loan Borrower Bill of Rights Amendment Act of 2024, D.C. Law 25-219, § 3, 71 D.C. Reg. 12314 (2024).

original) (quoting *Kornegay v. United States*, 236 A.3d 414, 418 (D.C. 2020)). "[O]ur analysis starts with the plain language of the statute" because we assume "that the intent of the lawmaker[s] is to be found in the language that [they] used." *Lucas v. United States*, 305 A.3d 774, 777 (D.C. 2023) (second and third alterations in original) (quoting *Reese v. Newman*, 131 A.3d 880, 884 (D.C. 2016)). Because "[t]he meaning . . . of certain words or phrases may only become evident when placed in context[,] . . . we do not read statutory words in isolation." *Yazam, Inc. v. D.C. Dep't of For-Hire Vehicles*, 310 A.3d 616, 623 (D.C. 2024) (quoting *In re Macklin*, 286 A.3d 547, 553 (D.C. 2022)). Instead, we are mindful of "surrounding and related paragraphs" and consider the words' "placement and purpose in the statutory scheme." *Id.* (quoting *In re Macklin*, 286 A.3d at 553). We generally "give effect to the plain meaning of a statute when the language is unambiguous." *Id*. (quoting *In re Macklin*, 286 A.3d at 553).

The CPPA, codified at D.C. Code §§ 28-3901–28-3913, "is a broad consumer protection statute, meant to 'assure that a just mechanism exists to remedy all improper trade practices.'" *District of Columbia v. Facebook, Inc.*, 2025 WL 2166018 at *2 (D.C. July 31, 2025) (quoting D.C. Code § 28-3901(b)(1)).

Section 28-3904 addresses who can be sued under the CPPA and on what grounds. Regarding the former, the statute provides that "[i]t shall be a violation of

[the CPPA] for *any person*"—broadly defined as "an individual, firm, corporation, partnership, cooperative, association, or any other organization, legal entity, or group of individuals however organized," D.C. Code § 28-3901(a)(1)—"to engage in an unfair or deceptive trade practice." *Id.* § 28-3904 (emphasis added). Regarding the latter, the statute defines "an unfair or deceptive trade practice" to include a lengthy list of misrepresentations, among other conduct, and makes clear that its prohibition applies "whether or not any consumer is in fact misled, deceived, or damaged thereby." *Id.*

Sections 28-3903, 28-3905 and 28-3909 define who may take action under the CPPA. Creating a tri-partite enforcement structure, they give the Department of Licensing and Consumer Protection (the Department)[3] administrative authority to enforce the CPPA, *id.* §§ 28-3903, 28-3905(a)-(j), and separately authorize both private actors—individual consumers, nonprofit organizations, and public interest organizations—and the Attorney General for the District of Columbia to file CPPA

---

[3] When the CPPA was first enacted, the consumer protection agency was called the "Office of Consumer Protection." D.C. Code § 28-3902 (1976). It was later changed to the "Department of Consumer and Regulatory Affairs." Fiscal Year 2001 Budget Support Act of 2000, D.C. Law 13-172, § 1402(c), 47 D.C. Reg. 6308 (2000). The name was recently changed again to the "Department of Licensing and Consumer Protection." Department of Buildings Establishment Act of 2020, D.C. Law 23-269, § 501(n)(3), 68 D.C. Reg. 1490 (2021). We refer to this agency as "the Department" in this opinion.

suits in Superior Court, *id.* §§ 28-3905(k) (private right of action), 28-3909(a) (Attorney General's enforcement authority).

The statutory provisions authorizing private actors and the Attorney General to bring CPPA claims in Superior Court reiterate that these enforcement mechanisms may be used against "any person." *See id.* §§ 28-3905(k)(1)(D)(i) (authorizing public interest organizations to "bring an action seeking relief from the use by *any person* of a trade practice in violation of a law of the District" (emphasis added)), 28-3909(a) (authorizing the Attorney General to sue if they have "reason to believe that *any person*" is violating or plans to violate specified statutory provisions, including Section 28-3904 (emphasis added)); *see also id.* § 28-3905(k)(1)(A) (generally authorizing consumers to sue to seek relief "from the use of a trade practice in violation of a law of the District," which encompasses Section 28-3904, which in turn prohibits "*any person*" from "engag[ing] in an unfair or deceptive trade practice" (emphasis added)). They contain no provision that protects Washington Gas from suit under the CPPA, *see generally id.* §§ 28-3905(k), 28-3909, and Washington Gas does not argue otherwise.

Rather, Washington Gas looks to Section 28-3903(c)(2), which specifies that "[t]he Department may not . . . apply the provisions of section 28-3905 to," among

others, "persons subject to regulation by the Public Service Commission."[4] *Id.* § 28-3903(c)(2)(B). By its plain language, this provision has no application to suits brought by anyone in Superior Court under the CPPA. The CPPA defines "Department" to mean "the Department of Licensing and Consumer Protection." *Id.* § 28-3901(a)(8); *see also In re Greenspan*, 910 A.2d 324, 341, 343 (D.C. 2006) (explaining that "the definition of a term in the definitional section of a statute controls the construction of that term wherever it appears throughout the statute" and

---

[4] Section 28-3903(c)(2) reads in its entirety:

(c) The Department may not:

. . .

(2) apply the provisions of section 28-3905 to:

(A) landlord-tenant relations;

(B) persons subject to regulation by the Public Service Commission of the District of Columbia;

(C) professional services of clergymen, lawyers, and Christian Science practitioners engaging in their respective professional endeavors;

(D) a television or radio broadcasting station or publisher or printer of a newspaper, magazine, or other form of printed advertising, which broadcasts, publishes, or prints an advertisement which violates District law, except insofar as such station, publisher or printer engages in a trade practice which violates District law in selling or offering for sale its own goods or services, or has knowledge of the advertising being in violation of District law; or

(E) an action of an agency of government.

that when "a legislature defines the language it uses, its definition is binding upon the court" (quoting 1A Norman J. Singer, Sutherland Statutes and Statutory Construction § 20:8 (6th ed. 2002))). Obviously, the Attorney General, empowered to bring CPPA claims in Superior Court under Section 28-3909, cannot be subsumed within the Department. *See* D.C. Code § 1-301.81 (establishing the Office of the Attorney General as an independent agency). Likewise, the private entities that may sue under Section 28-3905(k) in Superior Court, namely "consumer[s]," "nonprofit organization[s]," and "public interest organization[s]," are defined within the CPPA separately from, and with no reference to, the Department.[5] *Id.* § 28-3901(a)(2), (14), (15).

A review of other parts of the CPPA confirms a plain-language reading of Section 28-3903(c)(2) as having no application to suits brought by anyone in Superior Court under the CPPA. First, this provision is located within Section 28-3903, which is entitled "Powers of the consumer protection agency." *See Mitchell v. United States*, 64 A.3d 154, 156 (D.C. 2013) (acknowledging that, although the "significance of the title of the statute should not be exaggerated" and cannot

---

[5] Relatedly, Section 28-3903(c)(2)'s directive that the "Department may not . . . apply the provisions of section 28-3905" can only reasonably refer to Section 28-3905(a)-(j), *i.e.*, the provisions relating to the administrative adjudication of a complaint before the Department, and has no application to Section 28-3905(k), the provision relating to the private right of action in Superior Court.

override the plain text, "in determining the extent and reach of an act of the legislature, the court should consider not only the statutory language, but also the title"). Further, Section 28-3903, read as a whole, defines what "[t]he Department, in its discretion, may" do, D.C. Code § 28-3903(a); what "[t]he Department shall" do, *id.* § 28-3903(b); and what "[t]he Department may not" do, *id.* § 28-3903(c). The first two subsections refer to roles that clearly only apply to the Department as a government agency. Subsection (a) says that the Department "may," for example, "determine whether a person has executed a trade practice in violation of any law of the District of Columbia and provide a full remedy for such violation," "appoint private attorneys from the District of Columbia bar, who shall take action in the name of the Department," and "impose civil fines." *Id.* § 28-3903(a)(13), (16), (17). Subsection (b) says that the Department "shall," for example, "perform the functions of the Mayor, Department of Consumer Affairs, Board of Consumer Goods Repairs Services or Department of Economic Development in" various District statutes. *Id.* § 28-3903(b)(1). Logically, the word "Department" should adhere to its statutory definition not only in subsections (a) and (b) but also in Subsection (c) (referring to the limitations on the "Department's" adjudicative powers). *See Ruffin v. United States*, 76 A.3d 845, 854 (D.C. 2013) (endorsing the "presumption that identical words used in different parts of the same act are intended to have the same meaning" (quoting *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 595 (2004))); *accord*

*Fadero v. United States*, 59 A.3d 1239, 1250 (D.C. 2013). And, just as the permissive and directive provisions of this Section clearly cannot apply to private entities, the prohibitive provisions cannot either. Conversely, reading the word "Department" throughout Section 28-3903 to dictate the powers of private litigants would lead to illogical results. *See In re Macklin*, 286 A.3d at 553 ("When interpreting statutes, we assume that the legislature acted logically and rationally and we avoid interpretations of statutes which lead to implausible results." (quoting *Wade v. United States*, 173 A.3d 87, 95 (D.C. 2017))).

This plain-language interpretation of Section 28-3903(c)(2) is fortified by Section 28-3905(k), which as noted authorizes private actors to bring CPPA suits in Superior Court instead of pursuing administrative remedies before the Department. Section 28-3905(k) contains two subsections discussing the subject matter on which private litigants may and may not bring CPPA cases—(k)(5) and (k)(6)—neither of which adopts the limitations of Section 28-3903(c)(2). Section 28-3905(k)(5) precludes any action "under this subsection against a nonprofit organization . . . based on membership in such organization, membership services, training or credentialing activities, sale of publications of the nonprofit organization, medical or legal malpractice, or any other transaction, interaction, or dispute not arising from the purchase or sale of consumer goods or services in the ordinary course of business." And Section 28-3905(k)(6) provides that the private right of action "shall

apply to trade practices arising from landlord-tenant relations." Section 28-3905(k)(6) would seem to demonstrate that the limits on the Department's adjudicative powers under Section 28-3903(c)(2) cannot apply to the private right of action in Superior Court under Section 28-3905(k) because Section 28-3903(c)(2)(A) prohibits applying the CPPA to landlord-tenant relations. In other words, reading the exclusions in Section 28-3903(c)(2) to apply to Section 28-3905(k) would seem to bring Section 28-3903(c)(2)(A) in direct conflict with Section 28-3905(k)(6).

Lastly, Section 28-3901(c) also supports this plain-language understanding of Section 28-3903(c)(2). Section 28-3901(c) states that the CPPA "shall be construed and applied liberally to promote its purpose" and then specifically provides that the CPPA "establishes an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia." These provisions indicate that *all* "merchants"—which includes Washington Gas[6]—may be held liable for unlawful trade practices under

---

[6] A "merchant" is statutorily defined as "a person, whether organized or operating for profit or for a nonprofit purpose, who in the ordinary course of business does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or services, or a person who in the ordinary course of business does or would supply the goods or services which are or would be the subject matter of a trade or practice." D.C. Code § 28-3901(a)(3); *see also id.* § 28-3901(a)(1) (defining "person").

the CPPA, unless there is an express provision in the statute protecting the merchant from liability. As discussed above, the CPPA contains no express provision protecting entities like Washington Gas that are regulated by the PSC from private suits under the CPPA in Superior Court.

In sum, based on our review of the text of the CPPA standing alone, we see no prohibition on Washington Gas, as a PSC-regulated entity, being sued by the public interest organizations under the CPPA in Superior Court for unfair or deceptive trade practices. Effectively conceding that the plain text of the CPPA is not in its favor, Washington Gas argues instead, as it successfully did in Superior Court, that binding precedent from this court dictates that we affirm the dismissal of the public interest organizations' suit. We turn to that argument now.

## B. This Court's Precedent

Notwithstanding the plain language of the statute above, this court has issued decisions in which we have said that the limitations on the Department's adjudicative powers under Section 28-3903(c)(2) apply to the private right of action in Superior Court under Section 28-3905(k). Or, as Washington Gas states in its brief, "[t]he dispositive issue in this case is not new for this [c]ourt."

We begin with this court's 2009 decision in *Gomez*. Based on the limitations placed on the Department's administrative authority under Section 28-3903(c)(2), this court concluded in *Gomez* that a group of tenants could not sue their landlord under Section 28-3905(k) for alleged CPPA violations. 967 A.2d at 1284-88. Explaining our reasoning, we observed that "the Council has expressly forbidden the [Department from applying] the administrative remedies of the CPPA to landlord-tenant relations." *Id*. at 1286. We also noted that, before it was amended in 2000, Section 28-3905(k)(1) expressly tied the scope of the private right of action to the jurisdiction of the Department by providing that:

> [a]ny consumer who suffers any damage as a result of the use or employment by any person of a trade practice in violation of a law of the District of Columbia *within the jurisdiction of the Department* . . . may bring an action in the Superior Court of the District of Columbia to recover or obtain any of the following [remedies] . . . .

*Id.* (second and fourth alterations in original) (quoting D.C. Code § 28-3905(k)(1) (1999)). Although we acknowledged that the Council had since amended Section 28-3905(k)(1) to delete the language "within the jurisdiction of the Department," we nonetheless rejected the argument that the Council by that deletion had meant "to extend the private right of action created by the CPPA into the realm of landlord-tenant relations." *Id.* Instead, we stated that the "much more convincing explanation" was that the Council had deleted the reference to the Department in

Section 28-3905(k)(1) because five years earlier the Council had temporarily "suspended [Department] enforcement of the CPPA for budgetary reasons," so "it made no sense when rewriting this section to preserve the language which linked the scope of the private action to the jurisdiction of the [Department]." *Id.* at 1287. Moreover, we indicated that our holding imported all of the limitations on the Department's adjudicative authority in Section 28-3903(c)(2) into Section 28-3905(k). *Id.* at 1287-88. We specifically rejected "the logic of appellant's position" that the Council meant "to extend the reach of the CPPA not only to landlord-tenant relations but also to persons regulated by the Public Service Commission, to professional services of clergymen, lawyers, and Christian Science practitioners, to television or radio broadcasting stations, and to other entities listed [in Section 28-3903(c)(2)]." *Id.*

Our court has since favorably cited *Gomez*'s holding. *See Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 554-55 & n.1 (D.C. 2016) (holding that, under *Gomez*, private litigants could not bring private CPPA suits in Superior Court in landlord-tenant relations cases); *Frankeny v. Dist. Hosp. Partners, LP*, 225 A.3d 999, 1006 n.9 (D.C. 2020) (observing that, under *Gomez*, "the CPPA does not extend a private cause of action to the acts of those professionals expressly excluded from the statute"); *Sizer*, 270 A.3d at 305 n.6 (observing that the court had no authority to rule that *Gomez* was wrong when it was decided). We have also accepted that the

other limitations in Section 28-3903(c)(2) apply to the private right of action. *See*

*Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 715 (D.C.

2013) (noting that "the CPPA specifically excludes the professional services of

lawyers from its purview" under Section 28-3903(c)(2)(C)); *accord Bell v.*

*Weinstock, Friedman & Friedman, PA*, 2025 WL 2495917, *5 (D.C. 2025).

In short, although the plain text of the CPPA indicates that only the

Department is prohibited from adjudicating CPPA cases against entities regulated

by the PSC, our court has held otherwise and has not questioned that holding in the

more than a decade since its issuance. Because this court has "adopted the rule that

no [three-judge] division of this court will overrule a prior decision of this court . . .

and that such result can only be accomplished by this court en banc," *see M.A.P. v.*

*Ryan*, 285 A.2d 310, 312 (D.C. 1971) (footnote omitted), we are bound by *Gomez*'s

interpretation of the CPPA unless we can say that the changes made to the CPPA

since *Gomez* implicitly overruled that decision. *See Fallen v. United States*, 290

A.3d 486, 493 (D.C. 2023) (reaffirming that, "[o]utside the en banc process, '[t]his

court will not lightly deem one of its decisions to have been implicitly overruled and

thus stripped of its precedential authority'" (second alteration in original) (quoting

*Lee v. United States*, 668 A.2d 822, 828 (D.C. 1995))); *see, e.g.*, *Wonder Twins*

*Holdings, LLC v. 450101 DC Hous. Tr.*, 326 A.3d 768, 776-78 (D.C. 2024) (deeming

a portion of a prior holding legislatively overruled based on a subsequent amendment

to the statute). The public interest organizations gestured at such an argument in their initial brief but explicitly disavowed and thereby waived it in their reply brief. *See United States v. Scott*, 987 A.2d 1180, 1188 n.11 (D.C. 2010) (declining to reach "the merits of two other arguments the government might have made but has chosen, explicitly, to waive on appeal"). Instead, they assert that *Gomez* is distinguishable.

### C. The Public Interest Organizations' Efforts to Distinguish *Gomez*

Acknowledging that *Gomez* is a potential impediment to their suit, the public interest organizations seek to sidestep its holding.

First, they ask us to distinguish *Gomez* on the ground that *Gomez* was a "Sale[] Act case—not a deceptive advertising case." This argument does not bear scrutiny. The court in *Gomez* initially held that the plaintiff's CPPA claim was not viable because the plaintiff "did not base that claim on any separate acts or omissions of the defendants that might constitute" CPPA violations but instead "explicitly linked its CPPA claim to [an] asserted violation of the Sale Act," and Sale Act violations do not automatically constitute violations of the CPPA. 967 A.2d at 1284-85. But the court then concluded that the CPPA claim failed for the additional reason that the limitations on the Department's adjudicative authority under Section 28-3903(c)(2) also applied to private suits in Superior Court under Section 28-3905(k). *Id.* at 1285-88. This holding was separate from its Sale Act holding and is

independently binding on us.  If that were not clear when *Gomez* was decided, it became clear when we identified *Gomez*'s holding on this issue as binding precedent in *Falconi-Sachs*.  142 A.3d at 554-55 & n.1.

Alternatively, the public interest organizations seek to rely on the fact that the CPPA was amended in 2013 to expand standing for public interest organizations. *See* Consumer Protection Amendment Act of 2012, D.C. Law 19-282, § 2(b)(3), 60 D.C. Reg. 2132 (2013).  These amendments, among other things, added a new provision to Section 28-3905(k)(1) explicitly allowing "a public interest organization" to bring a CPPA claim "on behalf of the interests of a consumer or a class of consumers"—language that we have interpreted to displace Article III standing requirements for public interest organizations.[7]  D.C. Code § 28-

---

[7] These amendments also introduced provisions explicitly permitting individual consumers and nonprofit organizations to bring CPPA claims using tester standing.  D.C. Code § 28-3905(k)(1)(B)-(C); Consumer Protection Amendment Act of 2012, D.C. Law 19-282, § 2(b)(3), 60 D.C. Reg. 2132 (2013).  Section 28-3905(k)(1), as amended, now reads in full:

> (k)(1)(A) A consumer may bring an action seeking relief from the use of a trade practice in violation of a law of the District.

3905(k)(1)(D)(i); *see Animal Legal Def. Fund v. Hormel Foods Corp.*, 258 A.3d

---

(B) An individual may, on behalf of that individual, or on behalf of both the individual and the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District when that trade practice involves consumer goods or services that the individual purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes.

(C) A nonprofit organization may, on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District, including a violation involving consumer goods or services that the organization purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes.

(D)(i) Subject to sub-subparagraph (ii) of this subparagraph, a public interest organization may, on behalf of the interests of a consumer or a class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class could bring an action under subparagraph (A) of this paragraph for relief from such use by such person of such trade practice.

(ii) An action brought under sub-subparagraph (i) of this subparagraph shall be dismissed if the court determines that the public interest organization does not have sufficient nexus to the interests involved of the consumer or class to adequately represent those interests.

174, 182-85 (D.C. 2021) (*ALDF*)[8]; *accord Ctr. for Inquiry Inc. v. Walmart, Inc*, 283 A.3d 109, 115 (D.C. 2022).  The public interest organizations in this case argue that because *Gomez* was decided before the 2013 amendments, it necessarily could not have decided whether the exclusions in Section 28-3903(c)(2) applied to public interest organizations generally.  They point to the fact that the 2013 amendments were meant to create "maximum standing" for public interest organizations, which they argue suggests that the Council did not intend for the exclusions in Section 28-3903(c)(2) to apply to public interest organizations.  And they argue that this court should not extend *Gomez* to this context because actions brought by public interest organizations "to vindicate the rights of the public at large" are "conceptually very different" from those adjudicated by the Department or brought by individuals in Superior Court.

Certainly, it is true that the 2001 version of the CPPA interpreted by *Gomez* did not include an express reference to public interest organizations.  *See* D.C. Code § 28-3905(k)(1) (2001).  But we are unpersuaded that the 2013 amendments that

---

[8] *ALDF* refers to the "2012 amendments," presumably because they were enacted as part of the Consumer Protection Amendment Act of 2012.  *ALDF*, 258 A.3d at 182, 185; *see* Consumer Protection Amendment Act of 2012, D.C. Law 19-282, § 2(b)(3), 60 D.C. Reg. 2132 (2013).  But because they were enacted and went into effect in 2013, D.C. Law 19-282, § 2(b)(3), 60 D.C. Reg. 2132 (2013), we refer to them as the "2013 amendments."

loosened standing requirements for public interest organizations likewise gave them special status vis a vis the limitations in Section 28-3903(c)(2).[9]  Rather, although individual consumers, nonprofit organizations, and public interest organizations each have particular standing requirements under Section 28-3905(k)(1)(A)-(D), *see supra* note 7, they appear to be on equal footing as far as who they can sue, *see, e.g.*, D.C. Code § 28-3905(k)(5) (limiting the extent to which any private actor can bring

---

[9] To be clear, even before the 2013 amendments, public interest organizations could bring private actions under the CPPA as long as they met the requirements of Article III standing.  *See Grayson v. AT&T Corp.*, 15 A.3d 219, 224 (D.C. 2011) (holding that Article III standing is required in private CPPA suits); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982) (explaining the standard to establish organizational standing); *see also* D.C. Code § 28-3905(k)(1) (2001) ("A person, whether acting for the interests of itself, its members, or the general public, may bring an action under this chapter in the Superior Court . . . ."); *id.* § 28-3901(a)(1) (defining "person" broadly to include any "organization" or "group of individuals"). And the legislative history to the 2013 amendments makes clear that public interest organizations were bringing such CPPA suits before the enactment of those amendments.  *See* Consumer Protection Amendment Act of 2012, Report on Bill No. 19-0581 before the Committee on Public Services and Consumer Affairs, Council of the District of Columbia at 2 (Nov. 28, 2012) [hereinafter 2013 Amendments Committee Report] (recognizing that public interest organizations have "obtained great relief for District of Columbia citizens" by bringing private CPPA suits).  It is therefore incorrect to say, as the public interest organizations do, that because *Gomez* was decided before 2013, it necessarily could not have decided whether Section 28-3903(c)(2) applies to public interest organizations.

a private CPPA suit against a nonprofit).[10]  In fact, the text of the public interest organization provision explicitly ties itself to the private right of action for individual consumers by stating that public interest organizations may "bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District *if* the consumer or class could bring an action under subparagraph (A) of this paragraph for relief from such use by such person of such trade practice." D.C. Code § 28-3905(k)(1)(D)(i) (emphasis added).[11]

---

[10] The Council maintained this equal footing when it amended the CPPA again in 2019 to add provisions expressly authorizing all private plaintiffs and the Attorney General to bring CPPA cases related to landlord-tenant relations in Superior Court. *See* At-Risk Tenant Protection Clarifying Amendment Act of 2018, D.C. Law 22-206, § 2(a), 65 D.C. Reg. 12363 (2019); *see also* D.C. Code § 29-3905(k)(6) ("The right of action established by this subsection shall apply to trade practices arising from landlord-tenant relations."); *id.* § 28-3909(d) ("The Attorney General for the District of Columbia may apply the provisions and exercise the duties of this section to landlord-tenant relations."). The public interest organizations argue these amendments "underscored the legislature's intent that the CPPA be interpreted as liberally as possible, and did not suggest that nonprofit or public interest standing would be as limited as individual consumer standing is pursuant to subsection 28-3903(c)(2)(B)." But these amendments make no suggestion that public interest organizations should be singled out in this respect.

[11] The public interest organizations appear to argue that this clause does not preclude public interest organizations from bringing CPPA cases where an individual consumer would not have a private right of action because the clause says "if," but does not say "only if." But this argument is foreclosed by our holding in *ALDF*. *See* 258 A.3d at 185-86 (interpreting D.C. Code § 28-3905(k)(1)(D)(i) to mean that public interest organizations, to have standing, "must identify 'a consumer or a class of consumers' that could bring suit in their own right"); *accord Ctr. for Inquiry Inc.*, 283 A.3d at 115.

The public interest organizations' invocation of legislative intent gives us no reason to disregard the plain text of Section 28-3905(k)(1). There is no reference to *Gomez*, or Section 28-3903(c)(2), or who could be sued under the CPPA, in the legislative history of the 2013 amendments. *See generally* 2013 Amendments Committee Report. Rather, it is clear from the Committee Report that these amendments were meant to lessen standing requirements and expand the pool of private plaintiffs who could sue in response to this court's decision in *Grayson v. AT&T Corp.*, 15 A.3d 219 (D.C. 2011). *See id.* at 224 (holding that private plaintiffs must establish Article III standing to bring suit in Superior Court under the CPPA); 2013 Amendments Committee Report at 2-6.

Lastly, the public interest organizations' argument that this court should not extend the holding of *Gomez* to them misunderstands the court's analysis in that case. As explained above, *Gomez* held that the limitations in Section 28-3903(c)(2) apply to the Department and the private right of action alike, and it did so by reasoning that the private right of action used to contain language linking its scope to the jurisdiction of the Department, and the removal of that language was not meant to expand the scope of the private right of action. 967 A.2d at 1286-88. *Gomez*'s reasoning had nothing to do with perceived similarities between cases adjudicated by the Department and those brought by individuals in Superior Court. Thus, application of *Gomez* to the public interest organizations is not an extension of that

case's holding; rather, declining to apply *Gomez* to the public interest organizations would artificially constrict *Gomez*'s logic.[12]

### III.    Conclusion

For the reasons stated above, we conclude that we continue to be bound by the holding of *Gomez* that the limitations in Section 28-3903(c)(2) apply not only to the Department's adjudicative authority, as the plain language of the statute suggests, but also to the private right of action under Section 28-3905(k). Accordingly, we hold that public interest organizations may not, per Section 28-

---

[12] As a fallback, the public interest organizations argue that, even if, per *Gomez*, Section 28-3903(c)(2) generally applies to them, the limitation under Section 28-3903(c)(2)(B) should be "limited to the conduct actually regulated by the PSC." We see no foundation for such a limitation in the text of that provision, which refers broadly to "*persons* subject to regulation by the Public Service Commission of the District of Columbia" (emphasis added) and gives no indication that such "persons" in fact may be subject to private suit in Superior Court under the CPPA if the specific conduct at issue in the suit is not subject to the jurisdiction of the PSC. The public interest organizations seek to rely on Section 28-3903(c)(2)(A) and (C) to support their argument, but unlike (B), those subsections *do* refer to the subject matter of the suit, rather than the party being sued. *Compare* D.C. Code § 28-3903(c)(2)(A) ("landlord-tenant relations"), *and id.* § 28-3903(c)(2)(C) ("professional services of clergymen, lawyers, and Christian Science practitioners engaging in their respective professional endeavors"), *with id.* § 28-3903(c)(2)(B) ("persons subject to regulation by the" PSC).

Nor are we persuaded by the suggestion that a "conflict" between the CPPA and the PSC statute is created if consumers have no forum to pursue CPPA-type misrepresentation claims against entities subject to regulation by the PSC. Such a result would merely be a policy choice that the Council is free to make.

3903(c)(2), sue persons subject to regulation by the PSC, and we affirm the Superior Court's dismissal of the public interest organizations' suit.

*So ordered.*

EASTERLY, *Associate Judge*, concurring: I write separately because I believe *Gomez* was wrongly decided. Since 2000, the CPPA has contained no textual basis to impose Section 28-3903(c)(2)'s limitations on the Department's adjudicative powers on Section 28-3905(k)'s private right of action in Superior Court. *Gomez* read those limitations back into Section 28-3905(k) without regard for the text and structure of the CPPA, based on a speculative understanding of the statute's legislative history. The Council's post-*Gomez* amendments to the CPPA have pulled the text of the CPPA even further out of step with the *Gomez*-imposed restrictions. The Council may not have said quite enough to allow this division of the court to declare that *Gomez* has been legislatively overruled, but the Council has strongly suggested both that *Gomez* was wrong at its inception and expressly stated that it does not reflect its current understanding of the CPPA. This court should go en banc, overrule *Gomez*, and clear the field for the Council to legislate who may or may not be sued in Superior Court under the CPPA.

*Gomez* incorrectly interpreted the 2001 CPPA. As discussed in the majority opinion, the court in *Gomez* concluded that the Council's deletion in 2000 of

language in Section 28-3905(k) that restricted the private right of action in Superior Court to claims that were "within the jurisdiction of the Department" did not have the effect of expanding the private right of action. *See ante* Part II.B; *Gomez v. Indep. Mgmt. of Delaware, Inc.*, 967 A.2d 1276, 1286-88 (D.C. 2009). In effect, the court read the limitations in Section 28-3903(c)(2) right back into Section 28-3905(k)(1). This court reasoned that the Council had only deleted the "within the jurisdiction of the Department" language in Section 28-3905(k)(1) because the Department's operations had been temporarily suspended for budgetary reasons— not because the Council wanted to free the private right of action in Superior Court from the limitations on the Department's jurisdiction. *See ante* Part II.B; *Gomez*, 967 A.2d at 1286-87. But *Gomez*'s holding ignored the text and structure of the CPPA and had no basis in the legislative history of the 2000 amendments.

Although our starting point when interpreting a statute should be the text, *see ante* Part II.A, *Gomez* paid little mind to the language of the provisions at issue. *Gomez* deemed inconsequential the fact that Section 28-3903(c)(2), in the 2001 CPPA as now, only barred the "Department," as defined by Section 28-3901(a)(8), from adjudicating certain kinds of cases, and that, without the language the Council deleted from Section 28-3905(k)(1), there was no textual bridge between the limitations on the CPPA claims the Department could adjudicate and the CPPA claims a private party could bring in Superior Court. D.C. Code § 28-3905(k)(1)

(2001); *see Gomez*, 967 A.2d at 1286-87. *Gomez* conducted no analysis of the structure of the CPPA and did not recognize that its holding gave the word "Department" different meanings—Department as the government agency vs. the government agency plus private actors—not just in Section 28-3903 but throughout the statute. *See ante* Part II.A; *Gomez*, 967 A.2d at 1286-88.

*Gomez*'s surmise that the Council in 2000 had deleted the language linking Section 28-3905(k)(1) to Section 28-3903 because the Department's enforcement operations had been temporarily suspended in the 2001 budget until the next fiscal year,[1] also makes no sense as a textual matter. The Council did not disband the Department in response to this temporary suspension of operations. Rather, the Council left intact all of Section 28-3903 (specifying the Department's powers), including Section 28-3903(a)(1)-(3), (5)-(6), (11)-(13), (16) (specifying the Department's enforcement powers). *See* Fiscal Year 2001 Budget Support Act of 2000, D.C. Law 13-172, § 1402(c), 47 D.C. Reg. 6308 (2000). Thus, had the Council wanted the limitations on the Department's adjudicative authority to continue to dictate who private parties could sue in in Superior Court, the Council

---

[1] *See* Fiscal Year 2001 Budget Support Act of 2000, D.C. Law 13-172, § 1402(c), 47 D.C. Reg. 6308 (2000) (providing that "enforcement of this chapter by the [Department] is suspended until October 1, 2002"); D.C. Code § 28-3902(i) (2001).

could easily have left alone the linkage between Section 28-3905(k)(1) and Section 28-3903. And notably, although the Department was back in the enforcement business long before *Gomez* was decided in 2009, the Council had not made any amendments to re-link the private right of action to the jurisdiction of the Department. *See* D.C. Code §§ 28-3902(i), 28-3905(k) (2009).

In addition to these textual problems, *Gomez*'s assertion that it was relying on the legislative history of the CPPA does not bear scrutiny. There is zero evidence that, when the Council deleted the language tying the private right of action in Section 28-3905(k)(1) to the jurisdiction of the Department, it was thinking about the temporary suspension of the Department's enforcement operations. The court's opinion in *Gomez* conspicuously cites no documents related to the 2000 amendments that support this theory. Looking to the Committee Report, the only reference to the Department or the suspension of its enforcement operations is a mere mention that the proposed amendments would "extend the suspension of enforcement of this law by [the Department], thereby avoiding the large fiscal and personnel problem that would occur if the [Department] had to renew the program." Fiscal Year 2001 Budget Support Act of 2000, Report on Bill No. 13-679 before the Committee on Consumer and Regulatory Affairs, Council of the District of Columbia at 4 (April 26, 2000). This acknowledgement was preceded by a declaration of an intent to "codify the general rule that" the CPPA as a remedial statute should be broadly

construed. *Id*. And the Report went on to explain in separate paragraphs that it was strengthening the powers of both the Attorney General and private actors to bring suits in Superior Court. *Id*. *Gomez* highlighted the discussion of the increased powers of the Attorney General but ignored the discussion of the increased powers for private actors. 967 A.2d at 1287. Further, it failed to recognize that, under the statute as amended, the increased powers of the Attorney General and private litigants aligned in a critical respect—neither contained the limitations on the Department's adjudicative authority under Section 28-3903(c)(2).[2]

This court has reiterated and reaffirmed the holding of *Gomez* multiple times, but none of those cases shore up its reasoning. In *Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697 (D.C. 2013), this court reiterated the view that a private litigant could not sue a law firm under Section 28-3905(k)(1) because Section 28-3903(c)(2)(C) "excludes the professional services of lawyers from its purview." *Id*. at 715. But the court in *Pietrangelo* was not asked to address that issue; rather, the only argument the appellant made to challenge the dismissal of his

---

[2] It is generally beyond this court's authority to second guess the Council's clear policy choices as evidenced by the plain text of the statute. Our interpretive powers do allow us to avoid absurd results because we assume the Council would not have intended them. *See In re Macklin*, 286 A.3d 547, 553 (D.C. 2022). But it is hardly absurd to allow certain entities to be held liable only by private actors and the Attorney General in a court of law, presided over by a judge, and with access to a jury.

CPPA claim was that the trial judge had incorrectly failed to apply New York law (which would have allowed the appellant to bring a consumer protection claim against his lawyer) instead of D.C. law (which the appellant conceded did not). *See id.* at 713-14. In *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550 (D.C. 2016), we did nothing more than look to and apply *Gomez*, rejecting the argument that its discussion of Section 28-3903(c)(2) was dicta. *Id.* at 554-55 & n.1. In *Frankeny v. District Hospital Partners, LP*, 225 A.3d 999 (D.C. 2020), we observed in passing that, as construed by this court in *Gomez*, "the CPPA does not extend a private cause of action to the acts of those professionals expressly excluded from the statute." *Id.* at 1006 n.9. But we did not look to Section 28-3903(c)(2) to bar the private suit in that case because the defendants, medical professionals, did not fall under any of the categories listed in that Section. *Id.* at 1006. In *Sizer v. Lopez Velasquez*, 270 A.3d 299 (D.C. 2022), our analysis was directed at the appellants' argument that the 2019 amendments to the CPPA applied retroactively to their case, a proposition we rejected. *Id.* at 304-06. In that context, we observed in a footnote that we had no authority to revisit *Gomez* and *Falconi-Sachs*. *Id*. at 305 n.6. We did not conduct our own comprehensive plain text review of the CPPA or consider whether the 2019 amendments, applied prospectively, had the effect of legislatively overruling those cases. *See id.* at 304-06 & n.6. And in *Bell v. Weinstock, Friedman & Friedman, PA*, 2025 WL 2495917 (D.C. 2025), we reiterated *Gomez* and

*Pietrangelo*'s views without independent analysis. *Id.* at \*5 & n.15.

Since *Gomez*, the Council has amended the CPPA in ways that strongly suggest that, at the very least, it does not currently understand the limitations on the Department's adjudicative powers in Section 28-3903(c)(2) to apply to the private right of action. In 2013, the Council amended Section 28-3905(k)(1) to boost the private right of action by adding provisions explicitly allowing individuals and nonprofits to assert tester standing and replacing the requirements of Article III standing with a looser, statutory standard for public interest organizations. *See ante* note 7; *see also* Consumer Protection Amendment Act of 2012, D.C. Law 19-282, § 2(b)(3), 60 D.C. Reg. 2132 (2013); *Animal Legal Def. Fund v. Hormel Foods Corp.*, 258 A.3d 174, 182-85 (D.C. 2021); *accord Ctr. for Inquiry Inc. v. Walmart, Inc*, 283 A.3d 109, 115 (D.C. 2022). The Council made these changes in response to this court's decision in *Grayson*, which had construed the CPPA's standing requirements in a way that made it harder for parties to bring private suits. *See ante* Part II.C; Consumer Protection Amendment Act of 2012, Report on Bill No. 19-0581 before the Committee on Public Services and Consumer Affairs, Council of the District of Columbia at 2 (Nov. 28, 2012); *Grayson v. AT&T Corp.*, 15 A.3d 219, 238-45 (D.C. 2011). The 2013 amendments signal that the Council envisions the private right of action as its own robust and independent method of vindicating

consumers' protections under the CPPA.[3]

Subsequently, in 2019, the Council amended the CPPA again, this time to specify that private litigants and the Attorney General may bring CPPA actions in Superior Court in cases involving landlord-tenant relations. *See ante* note 9; At-Risk Tenant Protection Clarifying Amendment Act of 2018, D.C. Law 22-206, § 2(a), 65 D.C. Reg. 12363 (2019). Not only did these amendments legislatively overrule *Gomez* with respect to landlord-tenant relations cases, but they make it logically challenging, if not impossible, to read Section 28-3905(k) as being constrained by Section 28-3903(c)(2), because Section 28-3905(k)(6)'s directive that "[t]he right of action established by this subsection shall apply to trade practices arising from landlord-tenant relations" directly conflicts with Section 28-3903(c)(2)(A)'s prohibition on applying "the provisions of section 28-3905 to . . . landlord-tenant relations."

Moreover, when enacting the 2019 amendments, the Council made clear that

---

[3] Washington Gas highlights that these amendments to Section 3905(k) were meant to expand standing of private parties to sue in Superior Court and asserts that "they did not touch on the distinct question of *who can be sued* under the CPPA." But Washington Gas misses the point that, as structured, the CPPA broadly defines who can be held liable in Section § 28-3904 and then imposes limitations on this liability in the provisions identifying who has enforcement authority. *See* D.C. Code §§ 28-3903(c)(2) (barring the Department from adjudicating CPPA claims involving the listed persons and subject matter); § 28-3905(k)(5) (barring private suits against certain claims involving nonprofits).

it was not changing the law and that it had *never* understood the limitation on the Department's power to adjudicate claims related to landlord-tenant relations in Section 28-3903(c)(2) to apply to *either* to the Attorney General *or* to the private right of action. To the contrary, the Council rejected such an interpretation of Section 28-3903(c)(2) as "misguided" and "clarif[ied]" that this provision had no application beyond the Department. *See* At-Risk Tenant Protection Clarifying Amendment Act of 2018, Report on Bill No. 22-0170, before the Committee on the Judiciary and Public Safety, Council of the District of Columbia at 3 (Sept. 20, 2018) [hereinafter 2019 Amendments Committee Report]; *see also id.* at 2-3 (explaining that the Attorney General's "enforcement authority is not limited by the landlord-tenant exemption" applicable to the Department and that the bill "is needed to make explicit the [Attorney General's] power to" bring landlord-tenant CPPA cases, and to "similarly clarify that the private right of action available to consumers under

section [28-3905(k)] extends to tenant-consumers").[4]

That said, in enacting the 2019 amendments, the Council did not speak directly to whether the other exclusions in Section 28-3903(c)(2) should apply to the private right of action and stopped just short of stating that *Gomez* was wrongly decided. *See* 2019 Amendments Committee Report at 3 ("The D.C. Court of Appeals in *Gomez* . . . held that the Council did not intend to create a private right of action under the CPPA in the realm of landlord-tenant relations when it passed the law in 1976. Even if the court was correct in holding that it did not, there is

---

[4] Washington Gas counters that the fact that the Council overruled *Gomez* as to landlord-tenant relations but not as to the other limitations in Section 28-3903(c)(2) simply reaffirms that the Council intends for those other limitations to still apply to the private right of action. But Washington Gas misapprehends the Council's focus on landlord-tenant relations cases. The Council made the 2019 amendments to the CPPA in the "At-Risk Tenant Protection Clarifying Amendment Act of 2018." D.C. Law 22-206, § 2(a), 65 D.C. Reg. 12363 (2019). Because the Council's legislative objective was to protect vulnerable District tenants from landlords that engage in deceptive practices, it is unsurprising that the Council focused only on the landlord-tenant limitation. *See* 2019 Amendments Committee Report at 3-7. And given the Council's view that the bar on the Department's power to adjudicate claims involving landlord-tenant relations under Section 28-3903(c)(2) *never* applied to the private suits in Superior Court under Section 28-2905(k), it is hard to understand why the Council could think the other limitations on the Department's adjudicative powers applied to the private right of action. Put another way, if *Gomez* was wrong to read the limitation on the Department's adjudicative authority under Section 28-3903(c)(2)(A) back into Section 28-3905(k), then it was wrong to say that the private right of action was limited in any respect by Section 28-3903(c)(2), not just as to the limitation for claims regarding landlord-tenant relations.

reason to do so now."). I thus acknowledge that the Council did not say quite enough to allow this division of the court to declare that *Gomez* has been legislatively overruled. *See Fallen v. United States*, 290 A.3d 486, 493 (D.C. 2023). But this court sitting en banc can and should overrule *Gomez*, recommit itself to a plain text reading of the CPPA, and return to the Council the power to legislate who may or may not be sued thereunder.[5]

---

[5] Although the public interest organizations did not ask this division to hold that *Gomez* was wrongly decided, they may ask this court to rehear this case en banc to overturn *Gomez*. *See Fleming v. United States*, 224 A.3d 213, 219 (D.C. 2020) (en banc) (rejecting the argument that a "litigant should be required to present an argument to a division of the court that the division of the court would be required to reject" to preserve that argument for en banc review).